UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| BLANCA L., | ) |
|  Plaintiff, | ) ) ) |
| v. | ) Case No. 4:24-cv-04228-SLD-RLH |
| FRANK BISIGNANO, | ) ) ) |
|  Defendant. | ) ) |

ORDER

Plaintiff Blanca L. has appealed the decision of Defendant Frank Bisignano, the Commissioner of Social Security ("the Commissioner"), denying her benefits. Compl., ECF No. 1. Before the Court are Magistrate Judge Ronald L. Hanna's report and recommendation ("R&R"), ECF No. 13, recommending that the Court reverse and remand the Commissioner's decision, and the Commissioner's objection to the R&R, ECF No. 14. Blanca contends that the Administrative Law Judge ("ALJ") failed to sufficiently support his conclusion that she was not per se disabled by virtue of migraines that were the functional equivalent of epilepsy. Because the ALJ failed to support this conclusion with substantial evidence at any point in his decision, the Court OVERRULES the Commissioner's objection, ADOPTS the R&R, and REVERSES and REMANDS the case for rehearing.

### BACKGROUND[1]

On March 15, 2022, Blanca applied for disability insurance benefits and supplemental security income ("SSI") based on an alleged disability beginning in 2021. R. 19. After her claim

---

[1] Judge Hanna's R&R provides a detailed summary of the factual and procedural history of this case, including the ALJ's decision. *See* R&R 5–8. The administrative record can be found at ECF No. 8 and its exhibits. Citations to the record take the form R. __.

1

was denied, Blanca requested a hearing, which was conducted on April 18, 2024. *Id.* On June 21, 2024, the ALJ issued his decision denying disability benefits because Blanca was not disabled. R. 32. The ALJ concluded that Blanca had several severe impairments: depression, anxiety, PTSD, borderline personality disorder, migraine, ADHD, and edema. R. 22. However, he found that that none of those impairments were per se disabilities under the relevant Social Security regulations. R. 22–24. He further found that Blanca could still perform several types of work, meaning she was not disabled. R. 30–31.

After unsuccessfully seeking review of the ALJ's decision with the Appeals Council, R. 1, Blanca filed a complaint in this Court to challenge the decision, *see generally* Compl. She argues that the ALJ failed to adequately evaluate whether her migraines qualify as a per se disability by virtue of being medically equivalent to epilepsy, a disability recognized by regulation. Pl.'s Br. 9–15, ECF No. 9; *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.02. The Commissioner contends that the ALJ's analysis was sufficient under the relevant "substantial evidence" standard. Comm'r's Br. 1–5, ECF No. 11.

The issue was referred to Judge Hanna, who recommends that the Court reverse and remand the ALJ's decision. R&R 1. He concluded that the ALJ did not perform the necessary analysis of whether Blanca's migraines were the medical equivalent of epilepsy. *Id.* at 8. The Commissioner objects to the R&R, arguing that, contrary to Seventh Circuit precedent, it does not consider the ALJ's opinion as a whole when determining whether the ALJ performed the required analysis. Obj. R&R 1.

## DISCUSSION

I. **Legal Standards**

    a. **Review of R&R**

When the court refers a dispositive issue to a magistrate judge, the magistrate judge must promptly conduct the required proceedings, make a record of all evidentiary proceedings, and "enter a recommended disposition, including, if appropriate, proposed findings of fact." Fed. R. Civ. P. 72(b)(1). "Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." *Id.* 72(b)(2). A district court reviews *de novo* any portion of the magistrate judge's recommended disposition that has been properly objected to. *Id.* 72(b)(3). "If no objection or only partial objection is made, the district court judge reviews those unobjected portions for clear error." *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

    b. **Appeal from the Social Security Administration ("SSA")**

The Commissioner's disability determination will be upheld so long as it is supported by substantial evidence and not the result of an error of law. 42 U.S.C. § 405(g); *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). "Evidence is substantial when it is sufficient for a reasonable person to conclude that the evidence supports the decision." *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004). The ALJ's explanation of how the evidence supports her conclusion must be "sufficient to allow . . . a reviewing court[] to assess the validity of the agency's ultimate findings and afford [the claimant] a meaningful judicial review." *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). However, "[a]n ALJ need not address every piece or category of evidence identified by a claimant, fully summarize the record,

or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024).

A reviewing court will consider the entire record, but it will not "replace the ALJ's judgment with [its] own." *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020). Its review "is limited also to the ALJ's rationales; [it will] not uphold an ALJ's decision by giving it different ground to stand upon." *Id.* (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943)). As a result, the Commissioner's decision must "build an accurate and logical bridge from the evidence to [his] conclusion." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

   c. **Disability Determination**

As relevant here, claimants are eligible for SSI benefits or disability benefits if they are disabled. 20 C.F.R. § 416.202(a); 20 C.F.R. 404.315. A disability is "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* §§ 416.905(a), 414.1505(a). The SSA has developed a five-step sequential evaluation process to determine whether someone qualifies as disabled. *See id.* § 416.920(a). First, the SSA determines whether the claimant engages in any substantially gainful activity; if so, she is not disabled. *Id.* § 416.920(a)(4)(i). Next, it considers whether the claimant has a severe medically determinable physical or mental impairment or combination of impairments that has lasted for at least twelve months; if not, she is not disabled. *Id.* § 416.920(a)(4)(ii), 416.909. At the third step, the SSA determines whether the medical severity of the claimant's impairments satisfies enumerated criteria for a number of listed impairments. *Id.* § 416.920(a)(4)(iii); *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1. If the claimant's impairment meets the listed criteria, or if a similar impairment is medically equivalent

4

to the listed criteria, she is disabled. 20 C.F.R. § 416.920(a)(4)(iii). If she is not already determined to be disabled, before step four the SSA determines the claimant's "residual functional capacity" ("RFC") to work "based on all the relevant medical and other evidence in [her] case record." *Id.* § 416.920(e). Steps four and five then apply the claimant's RFC to consider whether she can still perform her past relevant work or make an adjustment to other work, respectively. *Id.* § 416.920(a)(4)(iv)–(v). If she can perform past work or make an adjustment to other work, she is not disabled. *Id.*

**II.     Analysis**

The parties dispute whether the ALJ built a logical bridge supported by substantial evidence when reaching the conclusion that Blanca's migraines were not the functional equivalent of epilepsy, a listed impairment, *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.02. Blanca argues that the ALJ failed to perform the requisite analysis. She states that, because migraines can be the medical equivalent of seizures, *see* SSR 19-4p, 2019 WL 4169635, at *7 (S.S.A. Aug. 26, 2019), the ALJ had an obligation to perform an 11.02 listings analysis. Pl's Br. 9, 12. However, she argues, the ALJ merely recited the listing criteria but never analyzed or explained whether Blanca's migraines satisfied the stated criteria. *Id.* at 12–13. The Commissioner responds that although the ALJ did not analyze the functional equivalence of Blanca's migraines with epilepsy at step three, the ALJ performed the necessary listings analysis in the RFC section of his decision. Comm'r's Br. 3. He argues that Seventh Circuit law allows the listings analysis to be under the RFC heading and that the analysis performed in that section was sufficiently detailed to support the ALJ's step three conclusion. *Id.* at 3–4.

The R&R agrees with Blanca. Its discussion begins by noting, as the parties agree, that the ALJ did not perform a listings analysis in step three. R&R 8–9. It concludes that the ALJ's

listings analysis is insufficient because it does not "construct 'an accurate and logical bridge' between the evidence and his conclusions." *Id.* at 11 (quoting *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013)). The R&R frames the Commissioner's argument as stating that the ALJ's error was harmless because sufficient analysis was performed in the RFC section. *Id.* at 14. The R&R rejected this conclusion, finding that using the RFC to support the ALJ's step three conclusion was inappropriate. *Id.* It found the RFC analysis insufficient because the ALJ did not expressly incorporate the RFC analysis into step three, because the RFC section asks different questions than step three—meaning its analysis cannot be transferred to step three without inappropriately speculating about the ALJ's reasoning, and because the ALJ's RFC analysis does not demonstrate that he fully considered and weighed the evidence relevant to step three in the RFC section. *Id.* at 13–14.

The Commissioner objected to this conclusion. *See generally* Obj. R&R. He argues that by requiring the ALJ to expressly incorporate the RFC section into his step three analysis, the R&R applies a standard higher than that established by the Seventh Circuit, and that the RFC section includes a sufficient consideration of Blanca's migraines. *See id.* at 1–4. Because the Commissioner objects to the R&R, it is reviewed *de novo*. Although the Commissioner is correct that the necessary listings analysis may be found in any portion of the ALJ's decision, in this case the ALJ nowhere performed the analysis of whether Blanca's migraines were the medical equivalent of epilepsy.

 a. **Requirements of ALJ Step Three Decision**

The first question is legal: what is required of an ALJ when making a decision under step three of the sequential evaluation? The Commissioner's position is clear: "ALJ decisions are read as a whole and the evaluation of migraines in the residual functional capacity (RFC) section

6

of the decision should be considered when evaluating whether the ALJ properly evaluated if Plaintiff met or medically equaled a Listing." Obj. R&R 1. Blanca seems to agree. *See* Reply Obj. R&R 1, ECF No. 15 (stating that Seventh Circuit cases "permit ALJs to provide detailed listing analysis in the RFC section rather than at step three"). The R&R's position is less obvious. The R&R states that an ALJ opinion can be "deconstruct[ed]" (presumably meaning extracting the relevant portion of the RFC analysis and applying it to a step three conclusion) "only when . . . the ALJ explicitly indicates that his analysis at one step is contingent upon his discussion at another." R&R 14. This is rooted in the R&R's conclusion that it could not say "predict with great confidence" that the ALJ would evaluate the evidence in the same manner in both the RFC and step three analyses. *Id.* at 12–14 (quotation marks omitted). As a result, the R&R only briefly addresses the ALJ's analysis in the RFC section. *See id.* at 13 (committing only one sentence to the question of whether the ALJ considered and weighed the relevant evidence in a different section).

The Court finds it helpful to first clarify what is required of ALJs under Seventh Circuit precedent. Since at least 2004, the Seventh Circuit has allowed ALJ's to apply a factual analysis in one section of a disability determination to another section without repeating the analysis. *See Rice v. Barnhart*, 384 F.3d 363, 372 n.5 (7th Cir. 2004) ("Because it is proper to read the ALJ's decision as a whole, and because it would be a needless formality to have the ALJ repeat substantially similar factual analyses at both steps three and five, we consider the ALJ's treatment of the record evidence in support of both his conclusions at steps three and five." (citation omitted)). The Seventh Circuit has specifically considered an ALJ's RFC discussion when determining whether the step three determination was sufficient. *See Curvin v. Colvin*, 778 F.3d 645, 650 (7th Cir. 2015) (reasoning that the RFC discussion "provide[d] the necessary detail

to review the ALJ's step 3 determination in a meaningful way"). Consequently, an ALJ's step three rejection can be upheld on the basis of a robust analysis in the RFC section even if the step three analysis itself is minimal. *See, e.g.*, *id.* (upholding an ALJ's step 3 analysis even though it "did not specify which impairments [the ALJ] considered and did not specifically discuss the evidence" when concluding that the claimant did not meet the standard for disabled).

The Seventh Circuit most clearly stated the rule in *Jeske v. Saul*, 955 F.3d 583, 590 (7th Cir. 2020): "when an ALJ explains how the evidence reveals a claimant's functional capacity, that discussion may doubly explain how the evidence shows the claimant's impairment is not presumptively disabling under the pertinent listing." This rule was reaffirmed in *Zellweger v. Saul*, 984 F.3d 1251, 1254 (7th Cir. 2021) ("[N]othing in *Chenery* prohibits a reviewing court from reviewing an ALJ's step-three determination in light of elaboration and analysis appearing elsewhere in the decision."). The *Zellweger* court noted that, in the case before it, "the ALJ's step-three analysis specifically incorporate[d] his evaluation of the medical evidence in the next section of his decision," *id.* at 1255, but this fact was not central to the Seventh Circuit's holding. The express incorporation merely served as further support for the general conclusion that reviewing courts may consider "the whole of the ALJ's decision" when determining whether the ALJ's analysis "supports the ALJ's step-three rejection." *Id.* And the Seventh Circuit has elsewhere cross-applied analyses in different sections without an express incorporation by the ALJ. *See, e.g.*, *Rice*, 384 F.3d at 370 & n.5.

Under relevant Seventh Circuit precedent, reviewing courts may consider the entirety of an ALJ's decision when determining whether the decision satisfies the legal requirements of a step three analysis. To the extent the R&R indicates that substantial evidence supporting the

ALJ's step three conclusion must be found in the step three section of the decision, either directly or by express incorporation, this Court disagrees.

### b. Substantial Evidence

The Court next considers whether the ALJ's analysis in the third step is supported by substantial evidence. Step three directs the ALJ to determine whether the physical or mental impairment identified at step two is listed in the specified Appendix. 20 C.F.R. § 416.920(a)(4)(iii); *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1. This requires that the impairment satisfy each of the listing's criteria. *Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999). If the impairment is listed and satisfies each of the listed criteria, the claimant automatically qualifies as disabled. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is not listed, the ALJ must consider whether it medically equals the criteria for one of the listed impairments. *Id.* This requires the claimant to show "that her impairment is accompanied by symptoms that are equal in severity to those described in a specific listing." *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004). If so, the claimant is per se disabled. 20 C.F.R. § 416.920(a)(4)(iii).

The claimant has the burden of proving equivalency in step three, but the ALJ also has an independent duty to analyze the claimant's impairment and explain the reasons why the listing criteria is or is not satisfied. *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006). This analysis, found in any portion of the ALJ's decision, must construct a logical bridge whereby the ALJ's conclusion is supported by substantial evidence.

In the relevant portion of his step three discussion, the ALJ only provided a bare recitation of what the listing criteria are under 11.02B and D and what the SSA considers when evaluating medical equivalence for primary headache disorder. R. 22. He did not even make an express finding on whether her impairment medically equals 11.02. *See id.* The RFC section is

9

more involved. *See* R. 24–30. In it, the ALJ described Blanca's treatment history for all impairments, including evaluations for physical and psychological health, along with the evaluations created by the providers. *See* R. 25–27. The ALJ concluded that, although Blanca's medically determinable impairments could have caused her alleged symptoms, "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." R. 28. He found that objective medical evidence did not support a conclusion that Blanca's symptoms "occur with such frequency, duration, or severity as to reduce [her] residual functional capacity [beyond what was otherwise stated]. . . or to preclude all work activity on a regular and continuing basis." *Id.* When providing examples of the disparity between Blanca's statements and the objective medical evidence, the ALJ did not discuss her migraines or headaches. *See id.* In fact, the RFC section only contains one mention of migraines, in the context of Blanca's reports of her symptoms at the hearing. R. 28. The only other mention of headaches came in the context of Blanca reporting to a nurse that she did not experience any headaches. R. 25.

      The SSA has provided guidance on how to evaluate whether primary headache disorder, which includes migraines, is medically equivalent to one of the listed impairments. *See* SSR 19-4p, 2019 WL 4169635, at *2, *7. "Epilepsy (listing 11.02) is the most closely analogous listed impairment for . . . primary headache disorder." *Id.* at *7. To satisfy the listing criteria for epilepsy, a claimant's impairment must be "documented by a detailed description of a typical seizure and characterized by A, B, C, or D [different types of seizures]." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.02. Primary headache disorder may manifest with "equivalent signs and limitations to those detailed in listing 11.02 (paragraph B or D for dyscognitive seizures)." SSR 19-4p, 2019 WL 4169635, at *7. The listing criteria for 11.02(B) and (D) are as follows:

>B. Dyscognitive seizures, occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment . . .
>D. Dyscognitive seizures, occurring at least once every 2 weeks for at least 3 consecutive months despite adherence to prescribed treatment; and a marked limitation in one of the following:
>    1. Physical functioning; or
>    2. Understanding, remembering, or applying information; or
>    3. Interacting with others; or
>    4. Concentrating, persisting, or maintaining pace; or
>    5. Adapting or managing oneself.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.02 (citations omitted). To evaluate whether a primary headache disorder is medically equivalent to the criteria in 11.02B, the SSA considers "[a] detailed description from an [acceptable medical source] of a typical headache event, including all associated phenomena . . . ; the frequency of headache events; adherence to prescribed treatment; side effects of treatment . . . ; and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment." SSR 19-4p, 2019 WL 4169635, at *7. The SSA considers the same factors when evaluating medical equivalence with the listing criteria in 11.02D, in addition to whether the primary headache disorder causes a marked limitation on one of the functions listed in 11.02D. *Id.* This is in contrast with the relevant considerations when determining the RFC of a person with primary headache disorder. In assessing a person's RFC, the SSA "must consider and discuss the limiting effects of all impairments and any related symptoms." *Id.* It "consider[s] the extent to which the person's impairment-related symptoms are consistent with the evidence in the record." *Id.* at *8.

The ALJ's decision does not reflect that he undertook the analysis laid out in SSR 19-4p. In the RFC section, the ALJ's analysis primarily considered whether Blanca's statements concerning the symptoms were consistent with the medical evidence in the record. *See* R. 28. And the analysis of this consistency included the symptoms of all medically determinable impairments, R. 28, including depression, anxiety, PTSD, borderline personality disorder,

11

migraine, ADHD, and edema, R. 22.  Blanca's headaches were never addressed independently.  The RFC analysis did not describe the headache events, their frequency, any treatment, side effects, or related limitations except in relation to the consistency between Blanca's descriptions and the medical evidence.  That is, the ALJ performed an RFC analysis, not a step three analysis.  He "consider[ed] and discuss[ed] the limiting effects of all impairments and any related symptoms."  SSR 19-4p, 2019 WL 4169635, at *7.  He "consider[ed] the extent to which [Blanca's] impairment-related symptoms [were] consistent with the evidence in the record."  *Id.* at *8.  But he did not consider detailed descriptions of headache events, the frequency of headache events, side effects, adherence to treatment, or limitations in functioning associated with the headaches.  *Id.* at *7.

Taking the ALJ's decision as a whole, including the RFC section, the ALJ never built a logical bridge supported by substantial evidence when reaching his conclusion that Blanca's headaches did not medically equal a listed impairment.  Although the Court reaches its conclusion for a slightly different reason than those stated in the R&R, it agrees that the Commissioner's denial of Blanca's disability claim was not supported by substantial evidence.

## CONCLUSION

Accordingly, the Commissioner of Social Security's objection, ECF No. 14, is OVERRULED and Judge Hanna's Report and Recommendation, ECF No. 13, is ADOPTED.  Pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's decision is REVERSED and REMANDED to the Social Security Administration for further proceedings consistent with this Order.  The Clerk is directed to enter judgment and close the case.

Entered this 30th day of January, 2026.

                                                      s/ Sara Darrow
                                                      SARA DARROW
                                        CHIEF UNITED STATES DISTRICT JUDGE